UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORRI MONTAGUE DURDEN,

                Plaintiff,                Civil Action No. 21-11035

v.                                              Stephanie Dawkins Davis
                                              United States District Judge

ROLAND PRICE and                     David R. Grand
KEVIN DRAVES,                           United States Magistrate Judge

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 13)

On March 31, 2021, *pro se* plaintiff Torri Durden ("Durden"), an incarcerated person, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Roland Price and Kevin Draves (collectively "Defendants"), both of whom are employees of the Michigan Department of Corrections ("MDOC"). (ECF No. 1). An Order of Reference was entered on June 30, 2021, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 5).

On September 14, 2021, Defendants filed a Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 13). In that motion, Defendants also seek summary judgment on Durden's official capacity claims against them. (*Id.*). Durden's response to this motion was docketed on October 1, 2021 (ECF No. 15), and no reply was filed. Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues

are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

I.     **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 13)** be **GRANTED IN PART** and **DENIED IN PART**.

II.     **REPORT**

    A.     **Background**

Durden is a State of Michigan prisoner, who is currently confined at the St. Louis Correctional Facility in St. Louis, Michigan. In his complaint, Durden alleges that, in September 2020, while he was housed at the Saginaw Correctional Facility ("SRF"), SRF mailroom staff Kevin Draves illegally opened his mail at the direction of SRF Inspector Roland Price. (ECF No. 1, PageID.7). Durden further alleges that, based on information gained from illegally accessing his mail, Draves and Price issued him misconduct tickets on September 21 and 24, 2020. (*Id.*). Although not entirely clear from the complaint, it appears Durden also claims that his mail was illegally accessed on March 19, 2021. (*Id.*).

Durden filed his complaint on March 31, 2021, alleging unlawful interference with his mail, in violation of the First Amendment, and violation of his due process rights. (*Id.*, PageID.4). Defendants now argue that summary judgment is warranted because Durden failed to properly exhaust his claims.

    B.     **Standard of Review**

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

2

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C. Analysis**

    *1. The PLRA's Exhaustion Requirement*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an

3

action, "under [§ 1983] or any other Federal law," with respect to prison conditions until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

The PLRA attempts to eliminate unwarranted federal court interference with the administration of prisons and thus seeks to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits[.]" *Id.* at 524. Thus, it is essential for a plaintiff to properly exhaust his administrative remedies before filing suit by filing a grievance that complies with the prison grievance system's requirements regarding the allegations made in his complaint.

An untimely or otherwise improperly filed grievance, even though appealed through all steps of a grievance procedure, does not fulfill the exhaustion requirement of 42 U.S.C.

4

§ 1997e(a). *See Northington v. Abdellatif*, No. 16-12931, 2019 WL 9406499, at *7 (E.D. Mich. Aug. 16, 2019) ("The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules."). Permitting an untimely or otherwise improperly filed grievance, even though appealed through all steps, to satisfy § 1997e(a)'s requirement "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford*, 548 U.S. at 97. The *Woodford* court explained:

> A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction…. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 95. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

2. The MDOC's Exhaustion Procedures

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 200. In Michigan's correctional facilities, prisoner grievances are governed by

5

MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 13-2). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved within two days after becoming aware of the grievable issue, he has five business days to file a Step I grievance. (*Id*. at ¶ Q). After receipt of the grievance, the grievance coordinator must determine if the grievance should be rejected pursuant to the Policy. (*Id.* at ¶ Y). If the grievance is rejected, the grievance response shall state the reason for the rejection without addressing the merits of the grievance. (*Id.*). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II grievance coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶ DD). After receipt of the grievance, the grievance coordinator must determine if the grievance should be rejected pursuant to the Policy; if so, the grievance response shall state the reason for the rejection without addressing the merits of the grievance. (*Id.* at ¶¶ EE). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ HH). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps.

        3.    *Durden Exhausted Only One Claim, Against Draves*

In their motion, Defendants argue that Durden did not properly exhaust his claims against them. (ECF No. 13, PageID.73-75). Defendants attach to their motion a copy of

6

Durden's "MDOC Prisoner Step III Grievance Report," and its underlying grievance documents, which show that he pursued, through Step III, four grievances arising out of incidents occurring at SRF prior to July 28, 2021 (the date of the report). (ECF No. 13-3). These grievances are summarized below:

| Grievance No. | Issue Grieved at Step I | Grievance Results |
|---|---|---|
| SRF-21-03-0291-28c (ECF No. 13-3, PageID.93-95) | *unrelated to lawsuit*<br><br>Durden claims that, on February 25, 2021, he was issued a ticket for sexual misconduct, but it should have been issued for a less serious charge of unauthorized communication; that he was never heard on the ticket; that the ticket was harassing; that he was deprived of access to his resources; and that he has kited healthcare over his anxiety. | Rejected at Step I for containing multiple unrelated issues; rejection affirmed through Step III |
| SRF-20-10-0729-28e (ECF No. 13-3, PageID.96-98) | *unrelated to lawsuit*<br><br>Durden claims that while he was in segregation beginning on September 26, 2020, he did not receive his hour in the prison yard, was not given toothpaste, and was not allowed to clean his cell. | Rejected at Step I as untimely; rejection affirmed through Step III |
| SRF-20-09-0657-28e ("SRF-0657") (ECF No. 13-3, PageID.99-100) | Durden claims that, on September 22, 2020, facility staff improperly read his mail. | Outcome of Step I and II unclear;[1] rejected at Step III because Durden failed to include Step I grievance response |

---

[1] Although the grievance records attached to Defendants' motion do not indicate how this grievance was handled at Step I or II, Durden attached a copy of the Step I grievance response to his complaint, which shows that the grievance was denied. (ECF No. 1, PageID.30).

7

| **Grievance No.** | **Issue Grieved at Step I** | **Grievance Results** |
|---|---|---|
| SRF-20-10-0692-27a ("SRF-0692") (ECF No. 13-3, PageID.101-02) | Durden claims that on September 25, 2020, Price issued him a false and retaliatory misconduct ticket. | Rejected at Step I as related to misconduct hearing process; rejection affirmed through Step III. |

In other words, then, Durden filed two grievances related to the alleged reading of his mail and issuance of a retaliatory misconduct ticket in September 2020 – Grievance Nos. SRF-0657 and SRF-0692 – which Defendants allege were not properly exhausted.

    *a.*    *Grievance No. SRF-0657*

Defendants first argue that Durden did not properly exhaust Grievance No. SRF-0657, which pertained to Draves' alleged reading of his mail, according to the terms of the MDOC's grievance process. Specifically, Defendants point out that Durden's Step III appeal of Grievance No. SRF-0657 was rejected due to his failure to include the Step I grievance and response with his Step III appeal. (ECF No. 13-3, PageID.99). Thus, Defendants assert that because Grievance No. SRF-0657 was properly rejected at Step III of the grievance process, it was not properly exhausted.

Courts have held that grievances that are rejected for failing to comply with the grievance procedure's requirements are not properly exhausted. *See Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) (prisoner cannot satisfy the PLRA's exhaustion requirement by filing a procedurally defective grievance). Here, the Step III grievance appeal form clearly provides that a copy of the Step I grievance and response "**MUST**" be attached to the grievance appeal form if the grievance is appealed to Step II or Step III. (ECF No. 13-

8

3, PageID.100) (emphasis in original). And, Defendants have come forward with evidence that Durden's Step III appeal was rejected because it was "Missing Step I grievance & response." (*Id.*, PageID.99).

Where, as here, Defendants have met their initial summary judgment burden of demonstrating that Durden did not comply with MDOC requirements in appealing Grievance No. SRF-0657 to Step III, Durden is required to produce "affirmative contrary evidence establishing the existence of a material question of fact on the exhaustion issue[,]" that is, "some proper evidence that [he] had, in fact, filed and appealed the relevant grievances through all three steps of the Policy's grievance process." *August v. Caruso*, No. 12-13775, 2013 WL 5291577, at *5 (E.D. Mich. Sept. 19, 2013). In his response to Defendants' motion for summary judgment, which is signed under penalty of perjury, Durden states as follows:

> In response to defendants' claim, I did include a copy of my step 1 [grievance] and response upon mailing to the director's office for step 3 review. This letter is outgoing mail handled and reviewed by def[endant] Kevin Draves personally and I believe he removed my step 1 [grievance] and response to protect his personal interest. Furthermore I find it quite ominous that the exact grievance pertaining to him and his mailroom staff being the only grievance denied for this reason.

(ECF No. 15, PageID.137).

In other words, then, Durden avers that he did in fact include with his Step III appeal a copy of his Step I grievance and response. (*Id.*). Durden's declaration to this effect, made under the penalty of perjury, is sufficient to meet his burden of establishing a genuine issue of material fact on the exhaustion issue because at this stage of the proceedings the

9

Court must accept the sworn declaration's contents as true. *See Ciminillo*, 434 F.3d at 464. "The case law suggests that when a prisoner submits some evidence that he [properly] submitted his Step III grievance appeal, he has satisfied his burden of responding to a motion seeking dismissal for failure to exhaust his Step III grievance appeal. Ultimately, it is Defendants' burden to establish a lack of a genuine issue of fact regarding the exhaustion of administrative remedies." *Miles v. Rink*, No. 19-cv-167, 2021 WL 2019765, at *6 (W.D. Mich. Apr. 15, 2021). Here, where Durden has submitted a sworn declaration expressly indicating that he included a copy of his Step I grievance and response with his Step III appeal, and Defendants have not submitted a reply brief contesting or otherwise rebutting Durden's assertions, Durden has established a genuine issue of fact with respect to the exhaustion of Grievance No. SRF-0657. Accordingly, this aspect of Defendants' motion should be denied.[2]

      b.  *Grievance No. SRF-0692*

In Grievance No. SRF-0692, Durden alleges that, on September 25, 2020, Price issued him a false and retaliatory misconduct ticket. (ECF No. 13-3, PageID.102). In their motion for summary judgment, Defendants argue that this grievance was properly rejected

---

[2] Although Durden should be allowed to proceed with his claim against Draves in his individual capacity, Durden's official capacity claims against both defendants fail. The Eleventh Amendment prohibits suit in federal court against the state or any of its agencies or departments unless the state has waived its sovereign immunity. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). The State of Michigan has neither constitutionally nor statutorily waived its Eleventh Amendment immunity as to federal court litigation brought against it. *See Morris v. Michigan Dep't of Corr.*, No. 21-10627, 2021 WL 1238129, at *2 (E.D. Mich. Apr. 2, 2021). And, actions against state officials in their official capacities are included in the Eleventh Amendment bar. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010). Thus, Durden's official capacity claims are barred by the Eleventh Amendment and should be dismissed.

– and, thus, did not exhaust any claims related to the September 2020 misconduct ticket issued by Price – because claims arising out of the issuance of a misconduct ticket are not grievable and must be exhausted through the misconduct hearing and appeal or rehearing process. (ECF No. 13, PageID.74).

District courts in Michigan have recognized that "decisions made in the prison hearings division are non-grievable." *Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5 (E.D. Mich. Feb. 27, 2019)). Instead, in such situations, a plaintiff is required to file an appeal or application for rehearing in order to exhaust his administrative remedies before seeking judicial review of the final decision or order. *See* M.C.L. § 791.255(1). The prisoner must make the rehearing request within thirty days after the final decision or order is issued. *See Ayotte*, 2019 WL 2219739, at *5.

In this case, Durden is alleging that Price issued him a false misconduct in retaliation for his threat to file a lawsuit regarding the alleged reading of his outgoing mail. (ECF No. 1, PageID.26). In *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011), the court held that when a prisoner claims that a prison official issued him a misconduct ticket for a retaliatory purpose, the prisoner must raise that claim during the misconduct hearing, not through the three-step grievance process described above. Indeed, in *Siggers*, where the plaintiff argued that he should have been excused from proceeding to Steps II and III of the grievance process because, while in segregation, he could not obtain a grievance appeal form, the Sixth Circuit observed that the only avenue for challenging the issuance of a misconduct report is a hearing. *Id.* at 694. *See also Harris-Bey v. Alcodray*, No. 16-12666, 2017 WL 3124328, at *4 (E.D. Mich. July 24, 2017) (claim that defendant wrote retaliatory

11

misconduct ticket was not properly exhausted because the plaintiff failed to raise the retaliation claim at the misconduct hearing and did not appeal the guilty finding).

In this case, a review of the misconduct hearing report stemming from issuance of the September 25, 2020 ticket shows that Durden did not allege during the hearing that the ticket was issued in retaliation for his threat to file a lawsuit. (ECF No. 1, PageID.16-18). Moreover, in his request for rehearing, Durden alleges that he was "thrown in seg[regation]" – *not issued a misconduct ticket* – in retaliation for preparing a lawsuit against Price. (*Id.*, PageID.19). Thus, where Durden did not properly exhaust his claim regarding Price's alleged retaliatory issuance of a misconduct ticket, summary judgment is appropriate on this claim.[3]

### c. Grievance Arising Out of March 2021 Incidents

Finally, Defendants argue that Durden did not exhaust any claims regarding incidents occurring on March 19 or 29, 2021, because he could not have completed the MDOC grievance process or misconduct hearing and appeal or rehearing process before he filed suit on March 31, 2021. The Court agrees.

Attached to Durden's complaint is a Step I grievance, dated March 22, 2021, in which he asserts that, on March 19, 2021, "[t]he inspector is violating inmates [sic] rights

---

[3] In his response to Defendants' motion for summary judgment, Durden claims that he did not know this type of claim needed to be exhausted through the misconduct hearing process, asserting that "[t]here is no readily available information informing inmates [that] the rehearing process holds any standings [sic] as to exhaustion pursuant to 42 USC § 1997e(a)." (ECF No. 15, PageID.137). In Grievance No. SRF-0692, however, Durden specifically stated: "I am not writing or grieving the misconduct only [Price's] actions and the impacting results of his actions." (ECF No. 1, PageID.26) (emphasis in original). Thus, it certainly appears that Durden was well aware that the misconduct ticket could not be challenged through the grievance process.

12

reading the outgoing legal mail ….." (ECF No. 1, PageID.25). Durden does not provide the Court with a response to this grievance and, indeed, the Policy states that the MDOC has a minimum of fifteen business days to respond to a Step I grievance after its receipt. (ECF No. 13-2, PageID.85). Here, then, when Durden filed his complaint only nine days after he submitted this grievance, and before the MDOC's Step I grievance response was due, his claims related to this grievance are not properly exhausted. Indeed, Durden does not dispute that he did not exhaust this grievance before filing the instant lawsuit, but instead claims that he acted prematurely as to this claim "in the interest of justice and protecting my constitutional rights." (*Id.*, PageID.135). But the PLRA's exhaustion requirement clearly applies to all claims, including constitutional claims. 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. at 85. And, although Durden claims that he filed his complaint "with a prewritten TRO in attempt to prevent irreparable injury" (ECF No. 15, PageID.135), no such motion appears on the docket as part of his complaint or otherwise. More importantly, this Court has rejected a plaintiff's attempt to file a complaint and motion for temporary restraining order ("TRO") prior to the exhaustion of administrative remedies. *See Garren v. Prisoner Health Servs.*, No. 11-14650, 2012 WL 204481, at *3 (E.D. Mich. Jan. 4, 2012) ("Because the timing and substance of Plaintiff's request for TRO make clear that he has failed to exhaust his administrative remedies … he is unlikely to succeed on the merits of those claims."). For these reasons, where Durden failed to exhaust any claim he might have arising out of Defendants' alleged actions on March 19, 2021, such claims should be dismissed.

13

### III.     CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment on the Basis of Exhaustion **(ECF No. 13)** be **GRANTED IN PART** and **DENIED IN PART**. Specifically, summary judgment should be **GRANTED** as to Durden's official capacity claims, as well as his claims regarding Price's alleged retaliatory issuance of a misconduct ticket and events that allegedly occurred on March 19, 2021, but **DENIED** as to Durden's claims based on the conduct alleged in Grievance No. SRF-0657.


Dated: March 24, 2022                             s/David R. Grand
Ann Arbor, Michigan                               DAVID R. GRAND
                                                  United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 24, 2022.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager